UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

PANTAURUS LLC,

                  Plaintiff,

                  v.

HULU, LLC,

                  Defendant.

Case No. 14-cv-00445

**HULU, LLC'S CORRECTED MOTION TO TRANSFER VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

    A.    PanTaurus Forms in Texas and Then, Just Months Later, Sues Dozens of Companies in the Eastern District of Texas for Infringing the '553 Patent...............................................................................................................1

    B.    Hulu's Witnesses and Documents Are Located in California ................................2

    C.    Third Party Witnesses with Material Information Reside in the Northern District of California.................................................................................3

    D.    No Substantive Proceedings Have Taken Place in This District ............................4

ARGUMENT ........................................................................................................................4

I.    Cases Should Be Transferred for the Convenience of Parties and Witnesses. ...................4

    A.    PanTaurus Could Have Sued Hulu in the Northern District of California. ..............................................................................................................6

    B.    The Private Factors Favor a Venue Transfer to California.....................................6

        1.    Most Relevant Evidence Is Located in or Near the Northern District of California. ...........................................................................6

        2.    The Convenience of the Witnesses Favors Transfer...................................8

        3.    The Availability of Compulsory Process Favors a Transfer.....................10

        4.    No Delay or Prejudice Will Be Caused By a Transfer. .............................11

    C.    The Public Interest Factors Also Favor Transfer of This Action...........................12

        1.    The Local Interest in Having Localized Interests Decided at Home Favors Transfer. .........................................................................12

        2.    The Remaining Public Interest Factors Are Neutral.................................13

    D.    Judicial Economy Favors a Transfer of This Case. ...............................................14

CONCLUSION.....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)........................................................................9, 14

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)........................................................................7, 8, 10

*In re Hoffman-La Roche*,
  587 F.3d 1333 (Fed. Cir. 2009)........................................................................11, 13

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir. 2003) ...........................................................................6, 11

*Innovative Global Sys. LLC v. OnStar, LLC*,
  2012 U.S. Dist. LEXIS 114504 (E.D. Tex. Feb. 14, 2012) ..................................15

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011)........................................................................9, 13

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
  2012 WL 194382 (E.D. Tex. Jan. 23, 2012)....................................................12, 14

*In re Nintendo*,
  589 F.3d at 1198 ..............................................................................................15

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)........................................................................5, 8

*ON Semiconductor Inc. v. Hynix Semiconductor Corp.*,
  2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) ....................................................6

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)....................................................................... *passim*

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964).........................................................................................5

*In re Verizon Bus. Network Servs.*,
  635 F.3d 559 (Fed. Cir. 2011).........................................................................14

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...........................................................................5, 8, 12

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...........................................................................5, 7, 11

# TABLE OF AUTHORITIES

**Page(s)**

*W. Coast Trends, Inc. v. Ogio Int'l, Inc.*,
2011 WL 5117850 (E.D. Tex. Oct. 27, 2011) ......................................................................12

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)..............................................................................9, 13, 14, 15

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'n*,
402 F. Supp. 2d 731 (E.D. Tex. 2005).................................................................................10

**Statutes**

28 U.S.C. § 1391(c) ........................................................................................................................6

28 U.S.C. § 1391(c)(2)....................................................................................................................6

28 U.S.C. § 1400(b) ........................................................................................................................6

28 U.S.C. § 1404(a) .................................................................................................................4, 14

**Other Authorities**

77 Fed. Reg. 48756, 48757 (Aug. 14, 2012)..................................................................................2

Fed. R. Civ. P. 45(c)(1)(A) ..........................................................................................................10

U.S. Patent No. 6,035,429...............................................................................................................4

U.S. Patent No. 6,272,533............................................................................................... *passim*

U.S. Patent No. 6,457,130...............................................................................................................3

## INTRODUCTION[1]

Plaintiff PanTaurus LLC, a newly formed patent-assertion entity, accuses California-based Hulu, LLC of infringing U.S. Patent No. 6,272,533 based on its use of open source software developed by and acquired from companies located in Palo Alto, California.

This patent action has no connection to the Eastern District of Texas other than plaintiff's many lawsuits filed here.  The Northern District of California, on the other hand, has a strong connection to the claims in this case.  As noted, for example, Hulu acquired the software used in its accused systems from companies in that district.  Additionally, material prior art sources are located in Northern California, as are likely licensees of the asserted patent.

Given the numerous and substantial connections between this action and the Northern District of California, coupled with the lack of any relevant connection to the Eastern District of Texas, the interests of justice and the convenience of the parties and witnesses would be best served by transferring this action to the Northern District of California.

## BACKGROUND

### A.     PanTaurus Forms in Texas and Then, Just Months Later, Sues Dozens of Companies in the Eastern District of Texas for Infringing the '553 Patent.

PanTaurus was formed as a Texas LLC in June 2013, less than one month before it acquired the '533 patent in July 2013.[2]  Decl. of Mark R. Schwarz in Support of Hulu LLC's Mot. to Transfer Venue ("Schwarz Decl.") Exs. 1-3.  PanTaurus is a non-practicing entity with no apparent business in the Eastern District of Texas (or elsewhere) other than litigation.

---

[1] Hulu is filing this Corrected Motion to address a factual error in its original motion.  Hulu only has one employee in Texas who works from her home.  She has no responsibilities relating to the Hadoop distributed file system that PanTaurus alleges is infringing.  At the time that Hulu originally filed this motion, on November 21, 2014, it believed this employee resided in Dallas, Texas.  On February 19 2015, Hulu discovered that this employee resides in Lantana, Texas.  Hulu's counsel immediately informed PanTaurus' counsel, and is filing this corrected motion to clarify where this employee resides.  Moreover, with the filling of the Eastern District of Texas judicial vacancies, Hulu has removed an argument it made regarding judicial resources and court congestion.

[2] The '533 patent's only named inventor appears to reside in Alexandria, Virginia.  *Id.* Ex. 6.

Less than two months after acquiring the '533 patent, on September 3, 2013, PanTaurus filed fifteen actions in this district (the "First Wave Cases") alleging infringement of the '533 patent.  *See* Case Nos. 1:13-cv-00538-52.  All First Wave Cases are believed to have settled and were dismissed.  Schwarz Decl. ¶ 5; Ex. 4.

On April 23, 2014, PanTaurus filed fifteen new "Second Wave" infringement actions, many of which have already settled and been dismissed.  *See* Case Nos. 1:14-cv-00226-40.  On September 2, 2014, PanTaurus filed a "Third Wave" of twelve cases, including this case against Hulu.[3]  *See* Case Numbers 1:14-cv-00439 through 1:14-cv-00450.  PanTaurus accuses Hulu of infringing the '533 patent by using systems with Hadoop-compatible file systems.

> 13.   Upon information and belief, [Hulu] has infringed and continues to directly infringe one or more claims of the '533 Patent, including at least claim 29, by making, having made and/or using secure computer systems covered by one or more claims of the '533 Patent, including without limitation digital computer systems comprising one or more Hadoop-compatible file systems (the "Accused Instrumentalities").  A Hadoop distributed file system, often referred to by the acronym "HDFS," is a distributed file system that includes computer hardware (e.g., servers and memory) and computer software for performing program functions.

Compl. ¶ 13, ECF No. 1.[4]  Hulu must respond to the complaint by November 24, 2014.  *See* Def.'s Unopposed First Appl. for Extension of Time to Answer, ECF No. 12.

**B.     Hulu's Witnesses and Documents Are Located in California.**

Hulu is an online video service that offers a selection of hit TV shows, clips, movies and more on the free Hulu.com service, and the subscription service Hulu Plus.  Wu Decl. ¶ 2.  Hulu

---

[3] Just days before PanTaurus sued Hulu, Unified Patents Inc. filed a petition on August 29, 2014, seeking inter partes review of the '533 patent.  Schwarz Decl. Ex. 5.  The Patent and Trademark Office must decide within six months whether to institute IPR.  77 Fed. Reg. 48756, 48757 (Aug. 14, 2012).

[4] Hadoop is an open source software framework used to store and to process huge amounts of data or "Big Data."  Hadoop enables distributed parallel processing of huge amounts of native format data across standard servers that both store and process the data.  Declaration of Xinan Wu in Support of Hulu LLC's Mot. to Transfer Venue ("Wu Decl.") ¶ 5.

is a Delaware company based in Santa Monica, California, and maintains additional offices in California, including in San Francisco, Los Angeles, and Novato. *Id.* ¶ 3. Both the San Francisco and Novato offices are located in the Northern District of California. Hulu employs approximately 553 of its 721 employees in California, including those with knowledge of the accused systems. *Id.* ¶¶ 3, 8. Hulu does not have any offices in this district. *Id.* ¶ 10.

### C.    Third Party Witnesses with Material Information Reside in the Northern District of California.

Hulu obtained the Hadoop software packages used in its accused systems from Hortonworks, Inc. and Cloudera, Inc. *Id.* ¶ 6. Both companies are based in Palo Alto, California. Schwarz Decl. Exs. 7, 8, 30, 31. Thus, critical witnesses and technical documents relevant to the design, development, and operation of the software packages used in the accused systems are located in the Northern District of California. Wu Decl. ¶ 7. These third-party witnesses cannot be compelled to testify in the Eastern District of Texas.

Additionally, at least two material prior art sources—Sun Microsystems, Inc.'s Network File System ("NFS") and Network Appliance, Inc.'s ("NetApp") U.S. Patent No. 6,457,130— have strong connections to Northern California and are likely to have relevant prior art in their possession. Sun began implementation of the NFS by at least March of 1984, in Mountain View, California. Schwarz Decl. Ex. 9.

In 2010, Sun was acquired by Oracle Corporation, which is headquartered in Redwood Shores, California. *Id.* Exs. 10, 11. NetApp, the assignee of the '130 patent, is headquartered in Sunnyvale, California, and each of the five named inventors appear to reside in Northern California cities. *Id.* Exs. 12-14.

Matthew Shafe, named inventor of U.S. Patent No. 6,035,429 cited in the IPR petition challenging the '533 patent, also resides in the Northern District of California. *Id.* Ex. 15. Mr. Shafe is likely to have knowledge concerning prior art to the claimed invention.

In addition, many defendants in related cases have already settled. Such settlements likely included a license of the '533 patent. A significant number of these third parties— including Acer America Corp., Apple, Inc., Asus Computer International, Fujitsu America, Inc., Hewlett-Packard Company, Lexar Media, Inc., and SanDisk Corporation—have principal offices in Northern California and are likely to have information relevant to damages. *Id.* ¶ 33.

> **D.     No Substantive Proceedings Have Taken Place in This District.**

No PanTaurus lawsuit has reached the stage of claim construction or other substantive proceedings. This case, in particular, is in its infancy. Hulu's response is not due until November 24, 2014. *See* Def.'s Unopposed First Appl. for Extension of Time to Answer, ECF No. 12. The Court has not held a case management conference, issued a scheduling order, or set a date for trial. And no discovery has occurred. The other Second, Third, and Fourth Wave cases are also in their infancies.

## ARGUMENT

### I.     CASES SHOULD BE TRANSFERRED FOR THE CONVENIENCE OF PARTIES AND WITNESSES.

For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer an action to another district where it might have been filed. 28 U.S.C. § 1404(a). Section 1404(a) is intended to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The party seeking transfer of venue must show that the

transferee district is "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

The threshold inquiry when analyzing a transfer motion is whether the suit could have been filed in the district to which transfer is sought. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  Once that threshold is met, a court analyzes the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

Relevant private factors include: (1) the relative ease of access to evidentiary sources; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial easy, expeditious, and inexpensive. *Id.*

Factors bearing on the public's interest include: (1) relative court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *Id.*

These factors are "not necessarily exhaustive or exclusive," and no single factors is dispositive. *Volkswagen II*, 545 F.3d at 314-15.  However, the plaintiff's choice of forum is *not* a relevant factor; indeed, the Fifth Circuit "forbids" its consideration. *In re Nintendo*, 589 F.3d at 1200.  Instead, the "good cause" burden borne by a party seeking a transfer "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315.

Timely motions to transfer venue should be made a "top priority in the handling" of a case, and "are to be decided based on the 'situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) (citation omitted).

### A.    PanTaurus Could Have Sued Hulu in the Northern District of California.

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides," (28 U.S.C. § 1400(b)), and a defendant is deemed to reside "in any judicial district in which [it] is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(c)(2).

Hulu maintains offices and conducts business in the Northern District of California.  Wu Decl. ¶ 3.  Hulu was thus subject to personal jurisdiction in the district when PanTaurus filed suit.  *See* 28 U.S.C. § 1391(c).  Because this action could have been filed in the Northern District of California, the threshold requirement for transfer is satisfied.

### B.    The Private Factors Favor a Venue Transfer to California.

All the relevant private factors bearing on a venue transfer motion—(1) the relative ease of access to evidence; (2) the availability of compulsory process to secure trial attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) other considerations that make trial easy, expeditious, and inexpensive—favor a transfer to the Northern District of California.

### 1.    Most Relevant Evidence Is Located in or Near the Northern District of California.

A court deciding whether to transfer venue must consider which party will likely "have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *ON Semiconductor Inc. v. Hynix Semiconductor Corp.*, No. 6:09-cv-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010).  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."

6

*In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal citations and quotations

omitted).  The location of documents and evidence remains an important factor, despite advances

in data transfer technologies.  *Id.*; *see also Volkswagen II*, 545 F.3d at 316; *In re TS Tech USA*

*Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

Here, many sources of proof in this case—including documents and employees of third-

party entities—are located in the Northern District of California.  For example, Hulu obtained the

Hadoop software packages from two Palo Alto-based companies are both located in the Northern

District of California.  Wu Decl. ¶ 6.  Additionally, companies and witnesses likely to have

relevant knowledge concerning prior art systems are located in the Northern California.  Schwarz

Decl. Exs. 9, 12.  Likely third-party licensees of the '533 patent are also headquartered in

Northern California and likely to possess documents relevant to damages.  *Id.* ¶ 33.

Additional important sources of proof—including Hulu employees knowledgeable about

the design and use of accused systems and technical documents relating to those systems—are

located nearby in Southern California.  Wu Decl. ¶ 8.  Hulu has no offices or facilities in the

Eastern District of Texas.  *Id.* ¶ 10.  No Hulu operations with any relevance to the infringement

allegations in plaintiff's complaint are conducted from the Eastern District of Texas, no

development work was performed there, and no infrastructure, software, or source code is

maintained there.  *Id.*  No documents relating to the accused systems are maintained in the

Eastern District of Texas.  *Id.*[5]

Indeed, there is no indication that *any* relevant evidence or witnesses are located in the

Eastern District of Texas.  The named inventor resides in Virginia, according to the face of the

patent.  Schwarz Decl. Ex. 6.  The attorney who prosecuted the '533 patent works in Washington

---

[5] Hulu has one home office employee in the entire state of Texas, who is located in Lantana,
Texas.  *Id.*  This one home office employee has no responsibilities relating to the accused systems and has
never accessed any technical documents relating to the accused systems.  *Id.*

D.C.  *Id.* Ex. 28.  And inasmuch as PanTaurus just formed as a company in Texas, (*id.* Ex. 1) and

its business appears limited to suing on the '533 patent, it is highly unlikely that any relevant

documents are located in this district.

Because the majority of key documents and witnesses are located in Northern California,

access to sources of proof strongly favors transfer to the Northern District of California.

### 2.       The Convenience of the Witnesses Favors Transfer.

In analyzing the cost and burden of attending trial, the Court considers the convenience

of both party and non-party witnesses.  *See Volkswagen I*, 371 F.3d at 204.  All potential

witnesses with relevant information must be taken into account, regardless of their likelihood of

testifying at trial.  *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that

the potential witness has more than relevant and material information at this point in the

litigation or risk facing denial of transfer on that basis is unnecessary.").

"'The convenience of the witnesses is probably the single most important factor in

transfer analysis.'"  *In re Genentech*, 566 F.3d at 1343 (citation omitted).  "'Additional distance

[from home] means additional travel time; additional travel time increases the probability for

meal and lodging expenses; and additional travel time with overnight stays increases the time

which these fact witnesses must be away from their regular employment.'"  *In re TS Tech*, 551

F.3d at 1320 (quoting *Volkswagen I,* 371 F.3d at 205).  In considering travel costs, the Court also

considers costs associated with the time fact witnesses must be away from their regular

employment.  *See In re Nintendo*, 589 F.3d at 1199.

Hulu does not know of any potential witnesses in the Eastern District of Texas.

Conversely, many third-party witnesses live in or near the Northern District of California.  Such

critical witnesses include companies who provided the Hadoop software used in Hulu's accused

systems, persons who developed prior art, and former defendants that likely licensed the '533

patent.  *See supra* at 3-4.

Employees of Hulu knowledgeable on the development and use of the accused systems, as well as financial information relevant to damages, all reside in Southern California.  Wu Decl. ¶ 8.  For these witnesses travel to the Northern District of California is far more convenient than travel to the Eastern District of Texas.

As the vast majority of key party and third-party witnesses are located in California, they would incur significant travel costs in connection with the approximately 2000-mile trip to Beaumont, Texas.  For example, there are no direct flights between any city in California, and Beaumont, Texas.  Schwarz Decl. Ex. 29.  *See In re TS Tech*, 551 F.3d at 1320 (holding that it was error not to "considerably weigh" the additional 900 miles witnesses would need to travel to attend trial in Texas).  It would also be highly disruptive to Hulu's business if key employees are required to travel to the Eastern District of Texas, spending an entire day to travel to and from Beaumont.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (noting "losses in productivity from time spent away from work").  All these costs would be minimized by transferring this case to the Northern District of California where Hulu has offices and key third-party witnesses reside.

In contrast, Hulu does not know of any potential witnesses in the Eastern District of Texas.  The named inventor does not reside in this district; nor does the attorney who prosecuted the patent in suit.  Schwarz Decl. Exs. 6, 28.  Plaintiff may claim it is more convenient to litigate in its chosen forum.  But the litigation-inspired presence PanTaurus has in Texas should be accorded no weight in deciding whether to transfer this case.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (corporate existence created "in anticipation of litigation" not given significant weight); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010)

("MedIdea's presence in Texas appears to be recent, ephemeral, and an artifact of litigation . . . [it] therefore has no presence in Texas that should be given weight in the transfer analysis.").

Because California is far more convenient for the majority of known likely party and non-party witnesses in this case, this "single most important factor" weighs heavily in favor of transfer to the Northern District of California. *See Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'n*, 402 F. Supp. 2d 731, 739 (E.D. Tex. 2005) (granting motion to transfer where "the majority of both party and non-party witnesses will be located in [transferee forum]").

### 3.    The Availability of Compulsory Process Favors a Transfer.

Transfer is favored when the transferee district has subpoena power over third-party witnesses with access to relevant information. *See In re Genentech*, 566 F.3d at 1345.  The availability of compulsory process to secure witness attendance at trial weighs in favor of transfer—"and not only slightly." *Id*.  A court may compel non-party witnesses to testify at trial only when located within 100 miles of the courthouse.  Fed. R. Civ. P. 45(c)(1)(A).

Here, all known non-party witnesses in this case are located outside of Texas, more than 100 miles from Beaumont, and outside the subpoena power of this Court.  Schwarz Decl. Exs. 7, 8, 10, 14.  For example, the companies that developed and provided the Hadoop software used in the accused Hulu systems are both located in Palo Alto, California. *Id*. Exs. 7, 8, 30, 31. Testimony from employees of these companies concerning the development and structure of the software will be critical at trial, and can be compelled only if trial occurs in the Northern District of California.

Additionally, the Network File System developed by Sun Microsystems may invalidate claims of the '533 patent.  Hulu expects that discovery will identify Sun/Oracle employees with unique knowledge of NFS.  Sun was located in Mountain View, California, and Oracle was headquartered in Redwood Shores, California. *Id*. Exs. 10, 11.  Both are located in the Northern

District of California, within 100 miles of the San Francisco courthouse.  *Id.* Exs. 16, 17.  If this case is transferred to the Northern District of California, live testimony will establish a first public use date and enable a jury to understand the full scope of this prior art.

Lastly, likely licensees of the '533 patent include at least Acer America Corp.; Apple, Inc.; Asus Computer International; Fujitsu America, Inc.; Hewlett-Packard Company; Lexar Media, Inc.; and SanDisk Corporation.  These companies have principal offices in Northern California within 100 miles of the San Francisco courthouse.  *Id.* Exs. 18-24.

In contrast, there appears to be no relevant witness located in the Eastern District of Texas.  The Northern District of California's subpoena power to secure the attendance of material non-party witnesses, coupled with this Court's lack of subpoena power over a single third-party witness, therefore favors transfer.  *See Volkswagen II*, 545 F.3d at 316 (finding a venue that enjoys subpoena power for trial is deemed more convenient than a venue in which subpoenas are subject to motions to quash); *In re Hoffman-La Roche*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009).

### 4.      No Delay or Prejudice Will Be Caused By a Transfer.

The fourth factor—potential delay or prejudice resulting from a transfer—is only relevant in "rare and special circumstances."  *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).  No such unusual circumstances are present here.  Hulu is seeking a transfer at the outset of this case.  The parties have not started conducting discovery, and the Court has not set any pretrial dates.  Nor has the Court spent any valuable resources analyzing the '533 patent or learning the parties' substantive positions through motion practice.  Judicial economy will not be sacrificed by a transfer to the Northern District of California.  Thus, all of the private interest factors weigh heavily in favor of transfer.

C.     **The Public Interest Factors Also Favor Transfer of This Action.**

In addition to considering the parties' private interests, the Court must also consider several factors bearing on the public's interest, including:  (1) court congestion; (2) the local interest in having localized interests decided at home; (3) familiarity of the forum with the governing law; and (4) the avoidance of unnecessary problems of conflicts of laws.  *In re TS Tech*, 551 F.3d at 1319-20.  Applied here, the balance of public interest factors favor a transfer to the Northern District of California.

1.     **The Local Interest in Having Localized Interests Decided at Home Favors Transfer.**

The local interest factor examines the "factual connection" that a case has with the transferee and transferor venues.  *Volkswagen I*, 371 F.3d at 206.  This factor is important because "'[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'"  *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

In considering the local interest, "[i]nterests that could apply virtually to any judicial district or division in the United States, such as the nationwide sale of infringing products, are disregarded."  *Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (internal quotations and citations omitted); *see also In re TS Tech*, 551 F.3d at 1321 (noting the availability of allegedly infringing products "throughout the United States" gives district "no more or less of a meaningful connection to this case than any other venue").

The Eastern District of Texas has no greater local interest than any other district based on the accused systems that are used internally by Hulu.  *See W. Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 10-CV-688, 2011 WL 5117850, at *5 (E.D. Tex. Oct. 27, 2011) ("[I]t is well settled

that the sale of accused products nationwide does not implicate the interests of the Eastern

District of Texas any more than the local interests of any other district.").

Moreover, there are no apparent sources of proof in Texas relating to plaintiff's claims

against Hulu, and or other factors establishing that this case has a special connection to Texas.

Certainly this case will not call into "question the work and reputation" of any individuals in the

community. *In re Hoffman-La Roche*, 587 F.3d at 1336-38. The Eastern District of Texas thus

has little interest in having the case tried locally. *See In re TS Tech*, 551 F.3d at 1321.

The Northern District California, however, has a strong local interest in the outcome of

this case. For example, the Hadoop software packages used in the accused systems were

designed and developed in the Northern District of California. Wu Decl. ¶ 7. "[I]f there are

significant connections between a particular venue and the events that gave rise to a suit, this

factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d at

1338. Moreover, many third-party witnesses likely have relevant information also live in the

Northern District of California. *See supra* at 3-4.

That the '533 patent was assigned to a Texas holding company shortly before plaintiff

started filing lawsuits in this Court does not give the Eastern District of Texas a meaningful

interest in the underlying litigation, and certainly not one that outweighs the strong local interest

of the Northern District of California. A local presence that is an artifact of litigation—as

plaintiff's presence appears to be here—is entitled to no weight in a transfer analysis. *See In re*

*Zimmer Holdings*, 609 F.3d at 1381; *In re Microsoft*, 630 F.3d at 1365. Accordingly, the local

interest also favors transfer to the Northern District of California.

## 2.     The Remaining Public Interest Factors Are Neutral.

Remaining considerations—such as familiarity of the forum with the law, the avoidance

of conflicts of law, and the application of foreign law—are neutral. Both the Northern District of

California and the Eastern District of Texas are well acquainted with patent law.  *See Network Protection Sciences*, 2012 WL 194382, at *7 ("Both the Northern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral.").  In fact, both courts have been designated for the Patent Pilot Program.  Schwarz Decl. Ex. 26.

Moreover, because federal patent law will govern the issues in this case, there are no problems with conflicts of law or the application of foreign law.  *See In re TS Tech*, 551 F.3d at 1320.  Therefore, these factors are neutral.

### D.      Judicial Economy Favors a Transfer of This Case.

In its Second and Third Wave suits, PanTaurus sued a number of defendants based in California.  Several of these defendants, including Dropbox, have already sought or may be seeking a transfer to the Northern District of California.  *See* Case No. 1:14-cv-00230, Def's Mot. to Transfer Venue, ECF No. 17.  Thus, transferring this case will not create significant judicial inefficiencies.  *See In re Acer Am. Corp.*, 626 F.3d at 1254-55 (finding factors favored transfer where "[the plaintiff], a company headquartered in the Northern District of California, brought suit in the Eastern District of Texas against twelve hardware and software companies, five of which are also headquartered in the Northern District of California").

Moreover, the fact that other cases may remain in this district does not preclude a transfer of this case.  *See In re Zimmer Holdings,* 609 F.3d at 1382 (holding that existence of another suit in forum does not "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor" transfer); *In re Verizon Bus. Network Servs.*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a).").

A "co-pending suit in its infancy . . . does not increase the Court's familiarity with the patents-in-suit and therefore does not implicate judicial economy." *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-CV-574-LED-JDL, 2012 U.S. Dist. LEXIS 114504 at *20 (E.D. Tex. Feb. 14, 2012); *accord In re Zimmer Holdings*, 609 F.3d at 1382.  Here, judicial economy will be better served by transferring this and related cases to the Northern District of California and allowing the Court there to coordinate proceedings of the actions.

## CONCLUSION

A proposed transferee forum is "clearly more convenient" when most of the relevant evidence is concentrated in or near one district and there are no witnesses and no evidence in the district deciding the transfer motion.  Because "most witnesses and evidence [are] closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff", Hulu's transfer motion should be granted.  *In re Nintendo*, 589 F.3d at1198.  Hulu respectfully requests that the Court transfer this case to the Northern District of California.

Dated:  February 26, 2015            Respectfully submitted,

                                     By:  /s/  Harry L. Gillam, Jr.

                                          Harry L. Gillam, Jr.
                                          GILLAM & SMITH
                                          303 S. Washington Blvd.
                                          Marshall, TX  75670
                                          Telephone:  903-934-8450
                                          Facsimile:  903-934-9257
                                          gil@gillamsmithlaw.com

                                          David Newman (pro hac vice pending)
                                          Mark Schwarz (pro hac vice pending)
                                          LOEB & LOEB LLP
                                          321 North Clark Street, Suite 2300
                                          Chicago, IL  60654
                                          Telephone:  312-464-3109
                                          Facsimile:  312-276-8375

                                     Attorneys for Defendant HULU, LLC

## CERTIFICATE OF CONFERENCE

I certify that counsel for Defendant Hulu LLC has complied with the meet and confer requirement in Local Civil Rule CV-7(h). This motion is opposed.  The conferences were conducted by phone on November 18, 2014 and February 20, 2015.  Harry L. Gillam participated for Hulu; Craig Tadlock participated for PanTaurus.  An agreement was not reached because the parties have opposing views on the relief requested by this motion. The discussions have conclusively resulted in an impasse, leaving for the Court to decide the motion.

/s/  Harry L. Gilliam, Jr.

Harry L. Gillam, Jr.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on February 26, 2015, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/  Harry L. Gillam, Jr.
Harry L. Gillam, Jr.